IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,              :    CIVIL ACTION
                                :    NO. 08-3630
    Plaintiff,              :
                                :
                                :
    v.                      :
                                :
VIACOM INTERNATIONAL,           :
    INC. et al.,            :
                                :
    Defendants.             :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          March 11, 2009

       Defendant Viacom International Inc. filed the instant motion to dismiss (doc. no. 4), arguing that Plaintiff failed to state a claim upon which relief can be granted.  For the reasons that follow, Defendant's motion to dismiss will be granted.[1]


I.  BACKGROUND

       Pro se Plaintiff Gordon Roy Parker, an individual who currently residing in Pennsylvania, brings the instant action against Defendants, Viacom International Inc., Venusian Arts Corp. (hereinafter "VAC"), and Erik "Mystery" Von Markovik.

---

[1]  As an alternative argument, Defendant contends that Plaintiff's complaint should be dismissed for violations of Federal Rule of Civil Procedure Rule 8(a).  Because the Court grants Defendant's Motion to Dismiss, the Court need not address Defendant's alternative argument.

Defendant Viacom International Inc. is a Delaware corporation with its principal place of business in New York, and the network on which the reality show, "The Pickup Artist" (hereinafter "TPUA") aired.  Defendant Venusian Arts Corporation is headquartered in California, and provides information and live seminars on "dating" related advice.  Defendant Von Markovic is an owner/ officer of Defendant VAC.

Defendant Viacom's reality television program, TPUA, debuted on August 5, 2007.[2]  Plaintiff alleges violations of the Lanham Act, Fair Housing Act, and Antitrust law stemming from this television program.  Specifically, Plaintiff's complaint contains five clusters of allegations:

1.   <u>Misleading advertising under the Lanham Act</u>.

This assertion is premised upon three misrepresentations: (a) Defendant Viacom lied about whether certain women in a dance club scene were paid actors; (b) one scene in a strip club was "completely fake;" and (c) Defendant Viacom overstated the social awkwardness of male contestants.

---

[2]     TPUA is an elimination-style reality show.  Defendant Von Markovik instructs socially awkward male contestants how to meet women and challenges them to test their new skills on camera in various outings to clubs and bars.  One contestant is eliminated in each episode; at the end of the season the remaining competitor is awarded the title of "Master Pick-Up Artist."

2. <u>False designations of origin under the Lanham Act</u>.
   Plaintiff contends that he is in the business of providing
   "seduction" advice to members of the public.  In connection
   with this venture, Plaintiff authored a book entitled, "29
   Reasons Not to Be a Nice Guy."  Plaintiff asserts that he
   has "first use trademark" to the use of the term 'pivot,' as
   used in his book, in commerce related to "seduction" advice.
   Plaintiff contends that Defendants' use of the term
   constitutes false designations of the origin under the
   Lanham Act.

3. <u>Fair Housing Act violations</u>.  Plaintiff alleges that
   Defendant Von Markovik posted disparaging messages about
   Plaintiff on the Internet and attempted to harass Plaintiff,
   "in the hope" that Plaintiff would move out of his residence
   and thereafter lose his internet access.

4. <u>Antitrust violations</u>.  Plaintiff contends that Defendant Von
   Markovik won a battle among the seduction gurus and is now
   "abus[ing] their majority relevant market share."

5. <u>Tortious Interference</u>.  Plaintiff alleges that Defendants
   tortiously interfered with Plaintiff's housing contract.


II.  DEFENDANT'S MOTION TO DISMISS

     A.  <u>Legal Standard - Pro Se Litigant</u>

         In deciding a motion to dismiss for failure to state a

claim upon which relief can be granted, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 216 (3d Cir. 2007) (quotation omitted). The Court need not, however, "credit either bald assertions or legal conclusions in a complaint when deciding a motion to dismiss." Id. (quotation omitted). The "'[f]actual allegations must be enough to raise the right to relief above the speculative level.'" Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007)). Viewing the complaint in this manner, the Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. In cases involving pro se litigants, the Court must "liberally construe" Plaintiff's pleadings. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).[3]

---

[3]     Defendant points out that Plaintiff is a "serial litigator" who has brought a number of actions in the Eastern District of Pennsylvania. See e.g., Parker v. Yahoo!, Inc., No. 07-2757 (E.D. Pa) (alleging claims for copyright infringement, breach of contract, and negligence against Yahoo! and Microsoft arising from cached copies of plaintiff's USENET postings); Parker v. Learn the Skills Corp., No. 06-229 (D. Del.) (alleging antitrust and Lanham Act claims); Parker v. Trustees of Univ. of Pennsylvania, No. 05-4874 (E.D. Pa.) (alleging employment discrimination); Parker v. Learn the Skills Corp., No. 05-2752 (E.D. Pa.) (alleging antitrust and related claims); Parker v. Google, Inc., No. 04-3918 (E.D. Pa.) (alleging copyright

-4-

B.  Analysis

Defendant Viacom International Inc. filed the instant motion to dismiss, or in the alternative, motion for a more definite statement (doc. no. 4).  Defendant addresses each of Plaintiff's claims in turn.  Plaintiff has filed a response in opposition to this motion (doc. no. 7).

1.  False and Misleading Advertising Claim under the Lanham Act

Defendant contends that Plaintiff's false and misleading advertising claims fail under the Lanham Act for three reasons: (1) Plaintiff lacks standing to bring a false and misleading advertising claim under this Act; (2) the alleged false statements at issue do not constitute commercial advertising or promotion; and (3) Plaintiff's alleged injuries are wholly speculative.

To have standing[4] to assert a false and misleading

_____

infringement and Lanham Act claims against Google and 50,000 "John Doe" defendants); Parker v. Learn the Skills Corp., No. 03-6936 (E.D. Pa.) (alleging antitrust); Parker v. Doe, No. 02-7215 (E.D. Pa.) (alleging defamation); Parker v. Univ. of Pennsylvania, No. 02-567 (E.D. Pa.) (alleging employment discrimination).

[4]    Standing consists of both constitutional and prudential components.  Constitutional standing is derived from the Article III case and controversy requirement and mandates that a plaintiff "demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant,

-5-

advertising claim under the Lanham act, a plaintiff must show that he "has a reasonable interest to be protected against false advertising." Thorn v. Reliance Van Co., 736 F.2d 929, 933 (3d Cir. 1984).  The Third Circuit identified the following factors to consider in the determination of whether Plaintiff has a "reasonable interest": (a) nature of plaintiff's alleged injury; (b) directness or indirectness of asserted injury; (c) the proximity or remoteness of the party to the alleged injurious conduct; (d) the speculativeness of the damages claim; and (e) the risk of duplicative damages or complexity in apportioning claims.  Conte Bros. Automotive, Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 233 (3d Cir. 1998) (citing Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 538, 540, 542, 543, 544)).

In Conte, the Third Circuit affirmed the district court's dismissal of plaintiffs' complaint, concluding that plaintiffs lacked standing to sue under the Lanham Act.  Id. at 224.  The plaintiffs in Conte, a nationwide class of retail sellers of motor oil, alleged violations of the Lanham Act caused

and that the injury will likely be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 162 (1997).  In contrast, prudential standing is a set of judge made rules which limit access to the federal courts to those litigants whose grievances fall within the zone of interests protected or regulated by the statutory provision invoked in the suit.  Id. Here, prudential standing is at issue.

-6-

by the false advertising of defendant, a company manufacturing
Slick 50, a Teflon-based engine lubricant.[5]  Plaintiffs contended
that defendant's false advertising statements increased Slick 50
sales and decreased sales of competing products sold by
plaintiffs.  Id.

In deciding that plaintiffs lacked standing under the
Lanham Act, the Third Circuit applied the above articulated
factors to determine if plaintiffs had a "reasonable interest to
be protected against false advertising."  First, the court
analyzed the nature of plaintiffs' injuries and noted that
plaintiffs alleged a commercial interest but not a competitive
harm.  Id. at 234.  Specifically, the plaintiffs alleged a loss
of sales at the retail level because of alleged false
advertising, but did not allege an impact on the ability to
compete; accordingly, the harm alleged was not the type of injury
that the Lanham Act sought to prevent.  Id. at 234-35.  Second,
the court found that the remoteness of the allegedly injurious
conduct weighed against the plaintiffs' right to sue because the
defendant's conduct did not directly relate to plaintiffs'
alleged harm.  Id. at 235.[6]  Third, the court noted that the

_____

[5]    Specifically, in defendant's advertising material it
stated, "one quart of Slick 50 substitutes for one quart of
regular motor oil at the time of an oil change."  Id. at 224.

[6]    In reaching this conclusion, the court compared
its decision in Serbin v. Ziebart Int'l Corp., 11 F.3d 1163 (3d
Cir. 1993), where it held that the plaintiffs lacked standing to

plaintiffs' injuries, "if not speculative, were certainly avoidable," because the plaintiffs could have adjusted their Slick 50 stock to fit the "artificially-increased popularity" of the product.  Id.  Finally, the court found that recognizing the right of all potentially injured parties in the distribution chain to assert standing under the Lanham Act would subject the defendant to multiple liability for the same conduct and would result in administratively complex damages proceedings.  Id.[7]

Similarly, here, Defendant argues that Plaintiff lacks standing to assert a cause of action in the instant matter.  As previously detailed, Plaintiff alleges that Defendant committed three instances of false advertising: (a) Viacom lied about whether certain women in a dance club scene were paid actors; (b) a certain scene in a strip club was "completely fake;" and (c)

_____

sue under the Lanham Act.  In Serbin, the Third Circuit held that plaintiff consumers whose purchases were influenced by false advertising lacked standing to sue under the Lanham Act because defendants' conduct was not directly related to plaintiffs' injuries.  Id. at 1177.  In Conte the Third Circuit commented that although the plaintiffs in Serbin ultimately lacked standing to sue, the Conte plaintiffs' injuries were even further attenuated from the Conte defendant's conduct than was the Serbin plaintiffs' injuries in comparison to the Serbin defendants' conduct.  165 F.3d at 235.

[7]    The Third Circuit went on to state, "If every retailer had a cause of action for false adverting regardless of the amount in controversy, regardless of any impact on the retailer's ability to compete, regardless of any impact on the retailer's good will or reputation, and regardless of the remote nature of the injury suffered, the impact on the federal courts could be significant."  Conte, 165 F.3d at 235.

-8-

Viacom overstated the social awkwardness of male contestants. Even assuming that these instances do in fact constitute false advertising, applying the factors articulated by the Third Circuit in <u>Conte</u>, Plaintiff has failed to establish standing to sue under the Lanham Act for several reasons.

First, similar to the insufficient commercial interest alleged by the <u>Conte</u> plaintiffs, here, Plaintiff alleges commercial interest in the "seduction education" industry, but fails to allege the required competitive harm caused by Defendant's actions.  Second, like the remoteness of the alleged harmful conduct to the plaintiff's injuries in <u>Conte</u>, Plaintiff's injuries are remote as he has failed to state a direct connection between Defendants' false statements and his injuries.  Finally, allowing Plaintiff to establish Lanham Act standing on these facts would raise the same administrative concerns expressed by the Third Circuit in <u>Conte</u>, as Defendants would face multiple liability for the same conduct.  Accordingly, because Plaintiff lacks standing to assert this claim under the Lanham Act, his claim on this ground is dismissed.

## 2.  <u>False Designation of Origin Claim</u>

Plaintiff argues that Defendant Viacom's unattributed use of the word "pivot" constitutes a claim for false designation

-9-

of origin under the Lanham Act.  According to Plaintiff, the term "pivot" describes a seduction technique, "a true 'gaming' tactic," that "any man can implement . . . with relatively equal effectiveness."  Pl's Compl. at ¶ 47.  Plaintiff contends that he "debuted and defined both the term 'pivot' and the underlying concepts behind the theory in his 1999 book '29 Reasons Not to Be a Nice Guy.'"  Id. at ¶ 46.  Defendant argues that Plaintiff has failed to allege the essential elements of a false designation of origin claim under the Lanham Act.

        To state a claim for false designation of origin under the Lanham Act, a plaintiff must show: (1) defendant "uses a false designation of origin;" (2) "[t]hat such use of a false designation occurs in interstate commerce in connection with goods and services;" (3) "[t]hat such false designation is likely to cause confusion, mistake or deception as to origin, sponsorship, or approval of [plaintiff's] goods or services by another person;" and (4) "[t]hat [plaintiff] has been or is likely to be damaged."  AT&T v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1428 (3d Cir. 1994).  Plaintiff has failed to state any of the essential elements of this action.

        First, the "false designation of origin" element is unsatisfied because Defendant is the producer or "origin of" TPUA, the good or service in question.  Pursuant to Supreme Court

-10-

precedent "the phrase 'origin of goods' is . . . incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23, 31 (2003).  In <u>Dastar</u>, the defendant allegedly copied content from plaintiffs' television series and repackaged the content as videotapes that it sold on its own.  <u>Id.</u>  The plaintiffs asserted that the sale of the videotapes, without proper credit to the television series, violated the false designation of origin prong.  The Court held that because the "origin of goods" was the actual, <u>tangible</u> videotapes produced, and not the ideas or concepts within the videotapes, the plaintiffs' claim failed the "origin of goods" prong.

This principle was applied in <u>Schiffer Publ'g, Ltd. v. Chronicle Books, LLC</u>, 350 F. Supp. 2d 613, 618 (E.D. Pa. 2004).  In <u>Schiffer Publ'g</u>, the court held that false designation of origin did not arise where the defendant published a textile book containing plaintiff's copyrighted photographs.  <u>Id.</u>  Determinative to the court's decision, the court found that the "origin of goods" at issue was the <u>actual book</u> that defendant publishers compiled, rather than the plaintiff's photographs contained within.  <u>Id.</u>

Like the videotapes in <u>Dastar</u> and the textile book in

Schiffer Pub'q, the "origin of the goods or services" at issue in
the instant matter is Defendant's production of TPUA.  Just as
the plaintiff's television series in Dastar, and the plaintiff's
photographs in Schiffer Pub'q, were component parts of the good
or service at issue, Plaintiff's term "pivot" is a component part
of TPUA, but not the "origin of good or service" itself.
Accordingly, because Defendant's production of TPUA is the
"origin of the good" at issue, rather than Plaintiff's term
"pivot," Plaintiff failed to satisfy the false designation of
origin element.

Second, the facts viewed in the light most favorable to
Plaintiff do not satisfy the requirement that the party asserting
copyright violation has "a valid and legally protectable mark."
Louis Vuitton Malletier & Oakley Inc. v. Veit, 211 F. Supp. 2d
567, 580 (E.D. Pa. 2002).  Notably, a claim for false designation
of origin presupposes the plaintiff has used the designation of
origin in issue to identify the plaintiff's own goods or
services.  A.J. Canfield Co. v. Honickman, 808 F.2d 291, 296 (3d
Cir. 1986).

Here, Plaintiff alleges that he "has a 'first use
trademark' to the use of the term 'pivot' in commerce related to
seduction-advice, but then notes that the work has acquired a
secondary meaning as applied to seduction.  (Pl.'s Compl. at ¶ 56

-12-

and 48).  Importantly, Plaintiff does not allege that the
secondary meaning in the industry is a mark to identify himself
as the source of any goods or services that he manufactures or
provides.  Plaintiff's allegations undermine Plaintiff's
conclusory claim that he has used the term as a trademark or that
the term has acquired a secondary meaning.

Finally, even if the Court were to conclude that
Plaintiff's use of the term "pivot" constituted a designation of
origin, Plaintiff's claim still fails because Plaintiff did not
assert that the false designation is "likely to cause confusion,
mistake, or deception" as to the origin of Plaintiff's goods.

In Parker v. Google, Inc., Plaintiff brought a claim
under the same theory which was rejected by the Third Circuit.
242 Fed. Appx. 833, 838.  There, Plaintiff also alleged that
defendant Google republished "Ray FAQ," a website which contained
defamatory comments about him.  Id.  Plaintiff asserted that
Google users searching for Plaintiff's site would find "Ray FAQ"
and believe that Plaintiff created the site.  Id.  However,
because Plaintiff failed to allege a likelihood of confusion with
respect to the origin of his seduction website, the Third Circuit
held that dismissal of the claim was appropriate.  Id.  As in
Parker, Plaintiff in the instant matter failed to allege how
Defendant's use of the term "pivot" created any confusion to the

origin of this term.  Accordingly, Plaintiff's claim on this ground is dismissed.[8]

### 3.  Fair Housing Act Violations

Defendant avers that Plaintiff has failed to state a claim for a violation of the Fair Housing Act.  Plaintiff contends that Defendant Von Markovik, posted an internet link and exhibit which implied Plaintiff was mentally ill, disclosed his

---

[8]    In addition, Plaintiff brought a disparagement claim under the Lanham Act.  In relevant part, the Lanham Act provides, "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . . or false or misleading representation of fact which . . . in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of . . . another person's goods, services or commercial activities, shall be liable in a civil action. . ."  Parker, 242 Fed. Appx. 833, 838-39 (3d Cir. 2007) (quoting 15 U.S.C. § 1125(a)(1)(B)).

Plaintiff alleges that Defendant Von Markovik directed non-party Derek Trust to post a comment and a link to a compressed or "zipped" document on the TPUA website.  Pl's Compl. at § 114.  The comment read: "Ray's books are free . . . he can't even give [them] away.  He has to piggyback his garbage e-books on affiliate orders for The Game."  Id.

In a previous case, Plaintiff raised a trade disparagement claim under the Lanham Act, citing disparaging statements about his seduction services.  Parker, 242 Fed. Appx. at 839.  Because Plaintiff did not purport that such statements were made in the context of commercial advertising or promotion, the Third Circuit upheld the District Court's dismissal of this claim.  Id.  Similarly, in the instant case, Plaintiff failed to assert that the alleged disparaging statement identified a proposed commercial transaction, and thus failed to state a disparagement claim under the Lanham Act.

-14-

home address, and encouraged third parties to contact authorities about him.  Because of these alleged internet posts, Plaintiff contends that Defendant aimed to "force him to move, in the hope Plaintiff would lose his internet access."  (Pl.'s Compl. at ¶ 134).

Under the Fair Housing Act, discrimination is the sale or rental of housing is prohibited on the basis of race, color, religion, sex, familial status, or national origin.  42 U.S.C §§ 3601-3631.  To assert a violation under the Fair Housing Act, plaintiff must show: (1) he is the "victim of a discriminatory housing practice;" (2) "that make[s] unavailable or den[ies]' housing" on account of a protected classification.  42 U.S.C. § 3604(a).  Here, Plaintiff has made no such claim.  Rather Plaintiff describes Defendants' behavior as harassment, designed to make him lose access to the Internet.

### 4.  Antitrust Violations

Plaintiff alleges that the migration of the "seduction community" from a newsgroup on USENET to a website owned by Learn the Skills Corporation caused Defendant Von Markovik to win the "mini war" among the gurus for the favor of non-party Neil Strauss, which purportedly "shifted the balance of power in the community" to Defendant Von Markovik.  Plaintiff also alleges

that Defendants Von Markovik and VAC created an "affiliate program," through which Plaintiff asserts they "abused their majority relevant market share."[9]

Section 2 of the Sherman Act makes it unlawful to monopolize, or conspire to monopolize interstate or international commerce.  15 U.S.C. § 2.  Liability under Section 2 requires, "(1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident."  United States v. Grinnell Corp., 384 U.S. 563, 570-571 (1966); Schuylkill Energy Resources v. Pennsylvania Power & Light Co., 113 F.3d 405, 412-413 (3d Cir. 1997).  To support an inference of monopoly power, a plaintiff must allege that a firm has a dominant share in a relevant market, and that significant "entry barriers" protect that market.  Harrison Aire, Inc. v. Aerostar Int'l, Inc., 423 F.3d 374, 380 (3d Cir. 2005).  Barriers may include such factors as "regulatory requirements, high capital costs, or technological obstacles that prevent new competition from entering a market in response to a monopolist's supracompetitive prices."  Parker v. Learn the Skills Corp., 530 F. Supp. 2d 661, 677 (D. Del. 2008) (citing United States v.

---

[9]     Notably, Plaintiff did not name Viacom in this count.

-16-

Microsoft, 253 F.3d 34, 51 (D.C. Cir. 2001)).

Anti-competitive conduct is defined as conduct to obtain or maintain monopoly power as a result of competition on some basis other than the merits.  LePage's Inc. v. 3M, 324 F.3d 141, 169 (3d Cir. 2003).  Importantly, conduct that merely harms competitors, while not harming the competitive process itself, is not anti-competitive.  Parker, 530 F. Supp. 2d at 677 (citing Brooke Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 224 (1993)).

Plaintiff brought a similar antitrust claim, premised upon market share abuse, which was rejected by the District of Delaware.  Parker, 530 F. Supp. 2d at 661.  In Parker, Plaintiff alleged that defendants created a market for seduction products and specifically prohibited anyone from dealing with him.  Id. Specifically, Plaintiff alleged that defendants posted derogatory and hostile comments about him on USENET, instructed internet users to use software to avoid messages and information generated by plaintiff, and invited readers interested in seduction to visit a private message board hosted by defendant.  Id. 669. Finding that Plaintiff failed to state an antitrust claim, the court held that although defendants' conduct may have harmed Plaintiff, it did not harm the competitive process as a whole. Id.  at 677.

-17-

In the instant case, Plaintiff makes a virtually indistinguishable argument.  Specifically, Plaintiff contends that Defendants attempted restrict the flow of information in the seduction industry, so as to divert internet traffic from Plaintiff's website.[10]  Just as in <u>Parker</u>, here, Plaintiff alleges personal harm, but does not allege harm to the competitive process as a whole.  Accordingly, for the reasons set forth in <u>Parker</u>, Plaintiff's claim on this ground is dismissed.

### 5.  <u>Tortious Interference</u>

Plaintiff alleges that Defendants tortiously interfered with his housing contract.  The Court is without jurisdiction over this claim for two reasons.  First, Plaintiff's complaint is predicated upon federal question jurisdiction.  Because Plaintiff's claims based on federal questions are dismissed, the Court will decline to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's tortious interference claims.  Second, to the extent that the Court could exercise diversity jurisdiction over this claim, Plaintiff has failed to allege jurisdiction on this basis, or plead the

---

[10]    Plaintiff contends that Defendant Von Markovik created fastseduction.com, an alleged "seduction portal."  Plaintiff asserts that Defendants used this site to restrict advertising in the seduction industry, and impair Plaintiff's access to the market.

-18-

necessary amount in controversy and citizenship requirements.
Accordingly, because the Court does not have jurisdiction over
this claim, Plaintiff's tortious interference claim is dismissed.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,    :  CIVIL ACTION
           :  NO. 08-3630
  Plaintiff,     :
           :
           :
  v.        :
           :
VIACOM INTERNATIONAL,   :
  INC. et al.,    :
           :
  Defendants.    :

## O R D E R

**AND NOW**, this **11th** day of **March 2009,** upon consideration of Defendant's Motion to Dismiss (doc. no. 4) and response thereto (doc. no. 7), it is hereby **ORDERED** that Defendant's Motion to Dismiss is **GRANTED;**

**IT IS FURTHER ORDERED** that as to Plaintiff's Counts I., II., III., IV., and V., Plaintiff's claims are dismissed on the merits.  As to Plaintiff's Count VI, Plaintiff's claim is dismissed for lack of jurisdiction;

**IT IS FURTHER ORDERED** that the case shall be marked **CLOSED.**

**AND IT IS SO ORDERED.**

       _S/Eduardo C. Robreno_____
        **EDUARDO C. ROBRENO, J.**